# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LA CASA DE BUENA SALUD, d/b/a
LA CASA FAMILY HEALTH CENTER
DENTAL CLINIC,

        Plaintiff,

vs.                              No. CIV 07-238 JB/RHS

UNITED STATES OF AMERICA,
BENNETT J. BAUR, as Personal Representative of the
Estate of LAURA McNAUGHTON, Deceased, MARIA
BEARDMORE and DAVID BEARDMORE; MADALIN CORINE
McNAUGHTON, a Minor; and KELSY PAIGE McNAUGHTON,
a Minor,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Supporting Memorandum, filed June 11, 2007 (Doc. 8)("Motion"); and (ii) La Casa de Buena Salud's Cross-Motion for Summary Judgment, filed June 22, 2007 (Doc. 11)("Cross-Motion"). The Court held a hearing on these motions on August 29, 2007. The primary issue is whether <u>Bauer v. Smith</u>, No. D-101-CV20061127 (First Judicial District Court, County of Santa Fe, State of New Mexico), a state case brought by the personal representative of the estate of a woman murdered by a dentist employed by the Plaintiff La Casa de Buena Salud, involves a claim for "damage[s] for personal injury, including death, resulting from the performance of a medical, surgical, dental, or related function . . . . by an . . . employee . . . while acting within the scope of his . . . employment . . . ." 42 U.S.C. § 233(a). Because La Casa has not sustained its burden of demonstrating the Court's jurisdiction to hear its claims, and because

the United States has not waived its sovereign immunity for such claims,  the Court will grant in part the Defendant's motion to dismiss for lack of jurisdiction the Complaint against the United States, will deny the United States' alternative requests for relief as moot, will deny the United States' requests for fees and costs, and will deny La Casa de Buena Salud's Cross-Motion for Summary Judgment.

## FACTUAL BACKGROUND

There is no genuine issue as to any of the material facts germane to the motions.  See Transcript of Hearing at 42:18-22 (taken August 29, 2007)("Tr.")(Court & Mitchell)(noting that the United States agrees with La Casa that there are no genuine issues of material fact and that the Court should decide the issue as a matter of law.).[1]

On May 6, 2005, pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA") of 1995, the Department of Health & Human Services re-deemed La Casa to be an employee of the Public Health Service ("PHS"), for purposes of the Federal Tort Claims Act ("FTCA") medical malpractice liability coverage, from January 2, 2005 through December 31, 2005. See Motion ¶ 1, at 3.  La Casa was put on notice that, as a deemed health center, it would continue to need other insurance, including general liability insurance.  See Motion at 14 n. 2; id., Exhibit E, Letter from Lisa Barsoomian, Deputy Associate General Counsel, to Seferino Montano, Executive Director of La Casa Family Health Center at 1-2 (dated October 6, 2006)("Ms. Barsoomian's October 6, 2006 Letter)(stating that "Policy Information Notice 99-08 (PIN 99-08)" requires Health Centers to carry other insurance, "(e.g., directors and officers liability, general liability, auto insurance).").

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

On June 2, 2005, James Smith, DDS, saw Laura F. McNaughton at La Casa's dental clinic for a dental examination.  See Motion ¶ 2, at 3, id., Exhibit B, Patient Progress Notes (dated June 2, 2005).  The United States contends that Smith did not see McNaughton at the dental clinic after that date, see Motion ¶ 2, at 3, but La Casa disputes the United States' statement of fact, see Plaintiff La Casa de Buena Salud's Consolidated Response in Opposition to Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment and Cross-Motion for Summary Judgment at ¶ 2, at 2, filed June 22, 2007 (Doc. 10)("Response").  Neither party supports their contention.

More than six months later, on or about December 9, 2005, McNaughton was murdered.  See Complaint ¶ 12, at 3, filed March 12, 2007 (Doc. 1)("Complaint").  On December 29, 2005, Smith was charged with first-degree murder (willful and deliberate), kidnaping (in the first degree), criminal sexual penetration in the first degree (force and coercion), and three counts of tampering with evidence.  See State of New Mexico v. James Smith, No. D-0905-CR-02005 00967, Grand Jury Indictment (Ninth Judicial District).  On December 12, 2006, Smith entered an Alford plea[2] to the charges of First Degree Murder (willful and deliberate), Kidnaping (First Degree), Criminal Sexual Penetration in the First Degree (Attempted), and one count of Tampering with Evidence.  See Complaint ¶ 13, at 3; State of New Mexico v. James Smith, Plea and Disposition Agreement.

Baur v. James Smith and La Casa De Buena Salud, No. D-101-CV-200601127, County of Santa Fe, First Judicial District Court, is a wrongful death claim brought pursuant to the New

_____

[2]  "An Alford plea is one in which a defendant may maintain his innocence while agreeing to forego his right to a trial . . . however, for such a plea to be valid  . . . there must always exist some factual basis for a conclusion of guilt before a court can accept an Alford plea [and]  . . . the collateral consequences flowing from an Alford plea are the same as those flowing from an ordinary plea of guilt."  Wirsching v. Colorado, 360 F.3d 1191, 1204 (10th Cir. 2004)(internal quotations and citations omitted).

Mexico Wrongful Death Act, N.M.S.A. 1978 § 41-2-1 against La Casa for the hiring, investigating, employing, training, instructing, supervising, disciplining, and retaining of Dr. Smith.  <u>See</u> Complaint, Exhibit 3, <u>Baur</u> Complaint ¶¶ 19-21, at 4-6.  Among other allegations, the <u>Baur</u> lawsuit alleges that La Casa negligently hired, supervised, and retained Smith, and in doing so, proximately caused Ms. McNaughton's murder.  <u>See</u> <u>id.</u>  Negligence is not the sole theory of liability in the <u>Baur</u> case brought in New Mexico state courts, because the plaintiffs in that case have also asserted an intentional tort against La Casa in Count IV.  <u>See</u> Complaint, Exhibit 3, <u>Baur</u> Complaint ¶¶ 22-24, at 6.  The plaintiffs in the <u>Baur</u> case also allege that La Casa and Smith negligently inflicted emotional distress upon them.  <u>See</u> <u>id.</u> ¶¶ 25-26, at 6.

The <u>Baur</u> Complaint alleges that Smith negligently took McNaughton's life.  <u>See</u> <u>Baur</u> Complaint ¶¶ 13-15, at 4.  It does not allege that Smith's negligence was medical malpractice.  <u>See</u> <u>id.</u>  The <u>Baur</u> Complaint also alleges that Smith maliciously, wilfully, recklessly, or wantonly caused McNaughton's death.  <u>See</u> <u>id.</u> ¶¶ 16-18, at 4.

On or about June 23, 2006, La Casa contacted the Department of Health & Human Services ("HHS") seeking immunity from the <u>Baur</u> lawsuit under the FTCA and the FSHCAA.  <u>See</u> Complaint ¶ 15, at 3.  On October 6, 2006, after receiving the request from La Casa's counsel, the HHS wrote La Casa's counsel and advised him that "the Secretary has determined that La Casa and Smith are not deemed employees of the PHS for purposes of the Baur lawsuit." Ms. Barsoomian's October 6, 2006 Letter at 1.  Ms. Barsoomian's October 6, 2006 letter, denying La Casa's request that it be "deemed" an employee of the PHS for purposes of the <u>Baur</u> lawsuit, specifically stated:

> [I]n order for the Secretary to deem La Casa . . . to be [an] employee . . . of the PHS for purposes of [the Baur] lawsuit, he would have to find that the acts or omissions giving rise to the Baur suit sound in medical malpractice, i.e., that Laura McNaughton's death resulted from the performance of medical, surgical, dental, or related functions.

Ms. Barsoomian's October 6, 2006 Letter at 2 (internal citation and quotations omitted).  Ms. Barsoomian's October 6, 2006 letter stated that, although Ms. McNaughton had been a patient at the clinic, "Ms. McNaughton was last treated at the health center on June 2, 2005, more than six months before her body was found."  Id. at 2.

On October 30, 2006, the United States Attorney wrote La Casa's counsel and advised that he was, based on the determination of the HHS, denying La Casa's request for a scope of employment certification.  See Motion, Exhibit F, Letter from David C. Iglesias, United States Attorney, to Stephen M. Simone, Esq. (dated October 30, 2006)("concur[ring] with the determination of the [HHS] that La Casa . . . [is] not [a] properly deemed employee. . .of the PHS for the purpose of [the Baur lawsuit].").  La Casa admits that the United States denied its certification request, but emphasizes that the denial "was based on the determination of the Department of Health and Human Services." Response ¶ 8, at 2.

On December 21, 2006, the United States Attorney reaffirmed his denial of scope of employment certification and consented to La Casa filing its Complaint for Declaratory Judgment.  See Complaint, Exhibit 2, Letter from David C. Iglesias, United States Attorney, to Stephen M. Simone, Esq. (dated December 21, 2006).  The United States contends that neither La Casa nor Smith sought review of the United States Attorney's denial of scope of employment certification pursuant to 42 U.S.C. § 233(l).  See Motion ¶ 10, at 4.  La Casa disputes the relevancy of 42 U.S.C. § 233(l), because it contends that 42 U.S.C. § 233(l) does not permit review of the United States Attorney's denial of scope of employment certification.  See Response ¶ 10, at 2.

**PROCEDURAL BACKGROUND**

La Casa filed its Complaint for declaratory judgment against the United States seeking judicial review of the HHS' denial of medical malpractice liability coverage under the FTCA.  See

Complaint.  In its March 12, 2007 Complaint, La Casa asserts two bases for the Court's jurisdiction and requests that the Court: (i) deem the <u>Baur v. Smith</u> lawsuit a medical malpractice action against La Casa in the form of negligent hiring, supervision, and retention of Dr. James Smith; (ii) deem La Casa an employee of the PHS under 42 U.S.C. § 233(g) for purposes of the <u>Baur v. Smith</u> lawsuit; (iii) find that La Casa acted within the scope of its employment when it hired, supervised, and retained Dr. Smith as a dentist; (iv) find that La Casa is immune under the FTCA pursuant to the Federally Supported Health Centers Assistance Act ("FSHCCA"), 42 U.S.C. § 233(g); (v) find that the United States has an obligation to defend and indemnify La Casa against the <u>Baur</u> lawsuit; and (vi) reimburse La Casa for attorney fees and costs incurred to date in defending against the <u>Baur</u> lawsuit and in bringing this action.  <u>See</u> Complaint at 5.   La Casa asserts the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201.  <u>See</u> Complaint ¶ 1, at 1.

Pursuant to D.N.M.LR-Civ. 7.1(a), the United States contacted La Casa's counsel and he indicated that he does not concur in the granting of this motion.  <u>See</u> Motion at 2.  The United States requests, pursuant to rules 12(b)(1), 12(b)(6), and 56(b), (c), and (e), that the Court enter an order dismissing La Casa's Complaint for Declaratory Judgment Relief with prejudice.  <u>See</u> Motion at 4. The United States argues that La Casa's Complaint fails to state a cause of action upon which the Court can grant relief.  <u>See id.</u> at 5.  Alternatively, the United States requests that the Court grant summary judgment in its favor.  <u>See id.</u> at 5-7.

On June 22, 2007, La Casa filed its cross-motion for summary judgment.  <u>See</u> La Casa de Buena Salud's Cross-Motion for Summary Judgment, filed June 22, 2007 (Doc. 11).  In its cross-motion, La Casa contends that it acted within the scope of its federal employment with the PHS when it hired, supervised, and retained Smith; that the <u>Baur v. Smith</u> lawsuit is a claim for medical malpractice; and, therefore, that, pursuant to the FSHCAA, it is entitled to medical liability coverage

under the FTCA.  See Cross-Motion ¶ 5, at 2.  La Casa argues that it properly asserts the Court's

jurisdiction under 5 U.S.C. § 702, because "a reasonable reading" of its Complaint "indicates that

it was seeking judicial review of a legal wrong it suffered because of agency action."  Plaintiff La

Casa de Buena Salud's Reply in Support of Cross-Motion for Summary Judgment, filed July 19,

2007 (Doc. 15)("Cross-Reply").  It argues that, because it specifically cited 5 U.S.C. § 702 in its

Response, and that the United States does not dispute that 5 U.S.C. § 702 waives its sovereign

immunity, La Casa has satisfied its burden of proving that the United States has waived its sovereign

immunity.  See Cross-Reply at 2-3.  La Casa contends that New Mexico law "imposes an

independent, nondelegable duty on a hospital to exercise reasonable diligence in hiring, supervising,

and retaining health care professionals."  Id. at 7.

On August 29, 2007, the Court held a hearing on this matter.  The United States

acknowledged that Chief United States Magistrate Judge Lorenzo F. Garcia was deciding essentially

the same legal issue raised by its motion in a different, unconsolidated case.  See Tr. at 4:8-6:14

(Mitchell & Court).

> THE COURT:        Is there a possibility of inconsistent results if I find that -- if
> I were to find that [La Casa] was not an employee or did not
> commit malpractice or the [FTCA] doesn't cover this
> situation and Judge Garcia goes the opposite direction? . . .
>
> MS. MITCHELL      It is presumably the same issue, Your Honor.

Id. at 4:18-25 (Court & Mitchell).[3]  The United States mentioned that it considered consolidating

---

[3]   On November 11, 2007, Chief Magistrate Judge Garcia issued a Memorandum Opinion
and Order granting the United States' motion to dismiss or, alternatively, for summary judgment,
and remanded the case to state court.  See Memorandum Opinion and Order Granting Defendant
United States' Motion to Dismiss or for Summary Judgment and Remanding Action to State Court,
filed November 19, 2007 (Doc. 34) in Baur v. Smith, No. CIV-07-560 LFG/WDS (D.N.M. 2007).
Judge Garcia found that the injuries for which the plaintiffs sought compensation "did not result
from actions done on behalf of La Casa by one of its employees, nor did they result from the

the two cases, but was not sure that it was necessary.  See id. at 5:3-6 (Court & Mitchell).  The

United States conceded that between the language in the Administrative Procedures Act ("APA")

and the FSHCAA "permit[ ] federal review of the agency determination . . . ."  Id. at 9:2-7

(Mitchell).  The United States clarified that its argument is that La Casa did not allege any

jurisdiction based on the APA and the FSHCAA, and has not moved to amend its Complaint.  See

id. at 9:20-22 (Mitchell).  The United States conceded that, were La Casa to amend its complaint

and invoke the Court's jurisdiction under both the APA and the FSHCAA, the Court would have

jurisdiction to decide the case.  See id. at 9:16-20 (Court & Mitchell).  The United States argued that

existence of a medical-malpractice action alone was insufficient for jurisdiction under the FTCA,

and that La Casa must be within the scope of its employment at the time the incident giving rise to

the claim occurs for the court to have jurisdiction.  See id. at 10:23-11:2 (Mitchell).  The United

---

performance of medical, surgical, dental or related functions, nor from any acts or omissions related
to the grant-supported activity of La Casa."  Id. at 19 (internal quotations omitted).  Judge Garcia
explained that:

> The fact that Laura McNaughton was a patient at La Casa, and received dental
> services from Smith on one or more occasions, is . . .  immaterial to the issue of
> whether Smith's acts constituted the performance of dental or related functions.
> Even if Smith's status as a dental care provider at La Casa supplied the occasion for
> Smith and Ms. McNaughton to meet, this would not convert his actions in engaging
> in erotic asphyxiation with her or, alternatively, in intentionally choking her to death,
> into the performance of dental functions.  No reasonable factfinder could conclude
> otherwise.

Id. at 21 (internal quotations omitted).  Judge Garcia "[could] not agree that the monitoring of an
employee's private sexual behavior is part of a medical clinic's duty as an employer or prospective
employer under the FSHCAA" and held "under the circumstances of [the] case, La Casa's actions
in hiring and retaining Smith were not functions related to the provision of medical or dental
services."  Id. at 24 (internal quotations omitted).  "Extending liability under the FTCA in this
situation would mean that the United States would be responsible for every customer who comes
into contact with an employee of a federally-funded health clinic at the place of business, if the
employee later causes harm to the customer in any context, however far removed from the physical
workplace or from the purpose of the clinic's business."  Id. at 26.

States noted, that if the Court were to deny its present motion to dismiss, it would move to dismiss under the FTCA by contending that the exemptions to the FTCA do not apply to assault and battery. See id. at 40:18-24 (Mitchell).  The United States agreed with La Casa that there are no genuine issues of material fact and that the Court should decide the issue as a matter of law.  See id. at 42:18-22 (Court & Mitchell).

La Casa conceded that both issues are essentially a policy decision.  See id. at 28:1-6 (Court & Smith).  La Casa contended that hiring and retaining a healthcare professional, such as Smith, was "within the scope of [L]a Casa's . . . federal employment of the public . . . health service, and if a jury finds that they negligently performed those functions  . . . then the breach could be found when Dr. Smith first met Ms. McNaughton and that was at the dental clinic." Id. at 31:18-24 (Smith).  La Casa argued that there are no genuine issues of material fact and that the Court must decide the issues as a matter of law based on the facts which the parties have provided.  See id. at 33:16-22 (Court & Smith).  La Casa asserted that its Complaint stated the complete grounds of jurisdiction under the APA and under the 28 U.S.C. § 1331.  See Tr. at 36:4-12 (Smith & Court).  La Casa noted that, were the Court to proceed under the APA and conduct a record review, then the standard of review would be an arbitrary-and-capricious standard.  See id. at 44:20-23 (Court & Smith).

The remaining Defendants argued that all the cases and issues should be decided in state court because of judicial efficiency and fairness to the parties.  See id. at 37:2-12 (Clifford & Court). The remaining Defendants noted that it preferred that the parties consolidate Baur v. Smith, No. CIV-07-560 LFG/WDS (D.N.M. 2007) with this case.  See Tr. at 38:22-39:7 (Clifford, Court & Mitchell).

## RELEVANT LAW REGARDING
## JURISDICTION AND SOVEREIGN IMMUNITY

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence."
Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998).  See Miller v. United States,
710 F.2d 656, 662 (10th Cir. 1983), cert. denied, 464 U.S. 939 (1983).  It is also "axiomatic that the
United States may not be sued without its consent and that the existence of consent is a prerequisite
for jurisdiction."  United States v. Mitchell, 463 U.S. 206, 212 (1983).  See FDIC v. Meyer, 510 U.S.
471, 475 (1994)("Absent a waiver, sovereign immunity shields the Federal Government and its
agencies from suit."); United States v. Testan, 424 U.S. 392, 399 (1976)("It long has been
established, of course, that the United States, as sovereign, is immune from suit save as it consents
to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to
entertain the suit.")(internal quotations omitted); United States v. Sherwood, 312 U.S. 584, 586
(1941)("The United States, as sovereign, is immune from suit save as it consents to be sued.").  As
with any jurisdictional issue, the party bringing suit against the United States bears the burden of
proving that sovereign immunity has been waived.  See James v. United States, 970 F.2d 750, 753
(10th Cir. 1992)("The party bringing suit against the United States bears the burden of proving that
sovereign immunity has been waived.").

Section 1331 of Title 28 of the United States Code is a general grant of jurisdiction which
provides that the district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treatises of the United States.  See 28 U.S.C. § 1331.  Section 2201 of Title
28 addresses the jurisdiction of "any court of the United States" over declaratory actions.  28 U.S.C.
§ 2201.  Neither of these statutes waives the sovereign immunity of the United States or confers
jurisdiction on the district courts over the United States.  As the court stated in Commonwealth of

Ky. v. Ruckelshaus, 362 F.Supp. 360 (W.D. Ky. 1973), aff'd, 497 F.2d 1172 (6th Cir. 1974):

> 28 U.S.C. Section 1331 has never been construed as a waiver of the sovereign immunity of the United States from suit . . . .  Moreover, the Declaratory Judgment Act, 28 U.S.C. Sections 2201, 2202, is procedural in nature and does not enlarge the jurisdiction of the district courts or waive the sovereign immunity of the United States.

362 F.Supp. at 367-68 (internal citations omitted).  See Henry v. Office of Thrift Supervision, 43 F.3d 507, 512 (10th Cir. 1994)(noting that the Declaratory Judgment Act itself does not confer jurisdiction on a federal court where none otherwise exists); New Mexico v. Regan, 745 F.2d 1318, 1321 (10th Cir. 1984)(explaining that 28 U.S.C. § 1331 does not include a general waiver of sovereign immunity by the United States); Cotter Corp. v. Seaborg, 370 F.2d 686, 692 n. 15 (10th Cir. 1966)(holding that 28 U.S.C. § 1331 does not waive sovereign immunity); Beagle v. Blount, 461 F.2d 1133, 1138 (5th Cir. 1972)(holding that 28 U.S.C. §§ 1331 and 1343 may not be construed to constitute waivers of the federal government's defense of sovereign immunity); United Tribe of Shawnee Indians v. United States, 55 F.Supp.2d 1238, 1243 (D. Kan. 1999)(noting that neither 28 U.S.C. §§ 1331 nor 2201 constitute waiver of sovereign immunity), aff'd, 253 F.3d 543 (10th Cir. 2001); O'Brien v. United States, 18 F.Supp.2d 1356, 1358 (N.D. Ga. 1998)(explaining that multiple courts have determined that 28 U.S.C. § 1331 does not constitute waiver of the federal government's sovereign immunity); Thomas v. Pierce, 662 F.Supp. 519, 524 (D.Kan. 1987)(noting that it is well settled that § 1331 is not a general waiver of sovereign immunity, and that neither 28 U.S.C. § 1361 or 28 U.S.C. §§ 2201 and 2202 waive the United States' sovereign immunity in mandamus or a declaratory judgment action); Enos v. United States, 672 F.Supp. 1391, 1392 (D. Wyo. 1987)(recognizing that 28 U.S.C. § 1331 does not constitute general waiver of sovereign immunity); Foreman v. General Motors Corp., 473 F.Supp. 166, 181-82 (E.D. Mich. 1979)(explaining that there is no way to construe 28 U.S.C. §§ 2201 and 2202 as waiver of immunity).

## LAW REGARDING THE FTCA AND FSHCCA

The FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their office or employment.  See 28 U.S.C. § 2679(b)(1).  The FSHCCA, 42 U.S.C. §§ 233(g) through 233(n), provides that certain public health entities receiving federal grants under 42 U.S.C. § 254b, and their employees and qualified contractors, are employees of the PHS for purposes of the FTCA.  See 42 U.S.C. §§ 233(g) - 233(n).  The FSHCCA makes a deemed entity a PHS employee for purposes of medical malpractice suits for actions committed within the scope of its employment.  See 42 U.S.C. § 233 (g)-(n).

The FSHCAA extended the FTCA protections to a deemed entity pursuant to 42 U.S.C. § 233(a).  See 42 U.S.C § 233(g)(1)(A).  Specifically, an individual sustaining "damage[s] for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the [PHS] while acting within the scope of his office or employment, shall be exclusive of any other civil action . . . ." against the United States.  42 U.S.C. § 233(a).  The FSHCAA provides FTCA coverage to "the same extent as the remedy against the United States [and that remedy] is exclusive pursuant to" 42 U.S.C. § 233(a).  Thus, the remedy provided by the FTCA pertains solely to actions resulting from the performance of medical, surgical, dental, or related functions.

The term "related functions" is not defined within the FSHCAA.  Compare 10 U.S.C. § 1089(a)(providing FTCA coverage to Armed Forces personnel for " the performance of medical, dental, or related health care functions (including clinical studies and investigations) while acting within the scope of his duties or employment . . . whose act or omission gave rise to such action or

proceeding.") <u>with</u> 42 U.S.C. § 233(a)(providing "damage[s] for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the [PHS] while acting within the scope of his office or employment . . . ."). Congress did not expressly define medical malpractice in the FSHCAA.

As reflected in the legislative history, Congress enacted the FSHCAA to address the problem of rising medical malpractice insurance premiums for community health centers in underprivileged areas by placing such centers, their employees, and qualified contractors under the FTCA's protection.  <u>See</u> H.R. Rep. No. 104-398 at 5 (1995), reprinted in 1995 U.S.C.C.A.N. 767, 769.  In describing the need to extend FTCA protection to health centers when the FSHCAA was first enacted in 1992, the Report of the House Committee on Commerce repeatedly stated that the FTCA would be the exclusive remedy for medical malpractice claims against these individuals and programs.  <u>See</u> H.R. Rep. No. 102-823(ll) at 4, 6, reprinted at 1992 U.S.C.C.A.N. 3268, 3268-72. In the same report, Congress directed the Attorney General to submit "a report on the medical malpractice liability claims experience of covered entities" by April 1, 1995, to inform its decision whether to extend the program after the initial three-year effective date of the FSCHAA.  1992 U.S.C.C.A.N. at 3271.

The problem that prompted Congress to enact the FSCHAA was the high cost of medical malpractice premiums that were diverting the health centers' limited resources from patient care. Congress used the term "medical malpractice" to describe the coverage health centers would receive under the FTCA.  Black's Law Dictionary defines medical malpractice as:

> Malpractice . . . [is a]n instance of negligence or incompetence on the part of a professional.  To succeed in a malpractice claim, a plaintiff must also prove proximate cause and damages. -- Also termed professional negligence . . . medical malpractice.  A doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar

-13-

circumstances.

Black's Law Dictionary (8th ed. 2007).  FTCA coverage for deemed entities applies only to actions for medical malpractice.

The FSHCAA provides that any action against any entity deemed a PHS employee "shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to subsection (a) of this section."  42 U.S.C. § 233(g).  Deemed entities' conduct will be covered under the FSHCAA, however, only if:

> [their] acts and omissions within the scope of their employment (or contract for services) are covered. If a covered individual is providing services which are not on behalf of the covered entity, such as on a volunteer basis or on behalf of a third-party (except as described in paragraph (d) of this section), whether for pay or otherwise, acts and omissions which are related to such services are not covered.

42 C.F.R. § 6.6(c).  42 C.F.R. § 6.6(c) provides: "Only claims for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions are covered . . . ."  Id.   An entity cannot be deemed under the FSHCAA unless:

> [T]he Secretary determines that the entity--
>
> (1) has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity;
>
> (2) has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary, has obtained the permission from these individuals to gain access to this information;
>
> (3) has no history of claims having been filed against the United States as a result of the application of this section to the entity or its officers, employees, or contractors as provided for under this section, or, if such a history exists, has fully cooperated with the Attorney General in defending against any such claims and either has taken, or will take, any necessary corrective steps to assure against such claims in the future; and
>
> (4) will fully cooperate with the Attorney General in providing information relating

-14-

to an estimate described under subsection (k) of this section.

42 U.S.C.A. § 233(h)(emphasis added).

The caselaw finding coverage under § 233(a) consistently involves an injury resulting from a physician's actions toward a patient or another individual seeking medical treatment.  In <u>Rivera v. Morris Heights Health Ctr.</u>, No. 05 Civ. 10154, 2006 WL 345855 (S.D.N.Y. February 14, 2006), the United States District Court for the Southern District of New York dismissed a plaintiff tort action arising out of medical malpractice for the actions of a medical center and its employee-physician during her treatment as a patient.  <u>See id.</u> at *1.  The defendant health center was "a private entity receiving federal grant money, and therefore . . . the center and its employees [were] deemed . . . employees of the [PHS] for the purposes of claims brought under the FTCA."  <u>Id.</u>  The acts of a doctor working for the Center was certified as within the scope of her employment when she rendered medical care to the plaintiff.  <u>See id.</u>  Because the Attorney General certified that the Center and the doctor "were acting within the scope of their deemed federal employment at the times giving rise to [the] suit . . . the United States [was] . . . substituted in place of [the defendants]."  <u>Id.</u> at *2 (citing 42 U.S.C. § 233(c)).

The United States District Court for the District of Connecticut has construed the duty to report suspected child abuse following a medical examination a "related function" under § 233, and thus finding that the FSHCAA provides immunity to [the doctor] vis a vis his statutory obligation because the duty is inextricably woven into his performance of medical functions."  <u>Teresa T. v. Ragaglia</u>, 154 F.Supp.2d 290, 299-300 (D. Conn. 2001).  In <u>Teresa T. v. Ragaglia</u>, children brought a § 1983 action following their witnessing of the fatal beating of an eight-month old baby.  <u>See Teresa T. v. Ragaglia</u>, 154 F.Supp.2d at 292-93.  "The issue for [that] court to determine [wa]s whether the injury for which the plaintiffs s[ought] compensation resulted from the defendants'

performance of medical or related functions within the scope of their employment." Id. at 299.  The

plaintiffs argued that the doctor's duty to report the suspected abuse of one of the plaintiffs "was not

a medical function, but a statutory duty imposed on certain members of the community and not

restricted to medical professionals." Id. (internal quotations omitted).  The court rejected that

argument, explaining that "the immunity provided to employees of the [PHS] is not limited to claims

for medical malpractice.  The immunity extends to claims [regarding] 'the performance of a

medical, surgical, dental, or related functions,' against those employees acting within the scope of

their employment." Id. at 299-300 (quoting 42 U.S.C. § 233(a))(emphasis in original).  The court

reasoned that the statutory duty to report suspected child abuse imposed by state law "is imposed

by doctors in their professional capacity." Teresa T. v. Ragaglia, 154 F.Supp.2d at 300 (internal

quotations omitted). "The obligation to report is required of doctors when they act as doctors, not

when they are acting as private persons." Id.  The court thus held that "[t]he duty to report is

therefore a 'related function' to the doctor's performance of medical services, because it adds a

required element to the doctor's evaluation of his patient." Id.

The United States Court of Appeals for the Second Circuit in Cuocco v. Moritsugu, 222 F.3d

99 (2d Cir. 2000), held that employees were entitled to statutory immunity under § 233(a) because

their "complained of behavior occurred entirely in [their] capacity as . . . doctor[s] responsible for,

and in the course of rendering treatment for, [the Plaintiff.]" 222 F.3d at 109.  The Second Circuit

"emphasize[d] that [the employees'] positions alone [did] not render them immune from suit." Id.

 Cuoco was a preoperative transgender prisoner "receiving synthetic estrogen treatments under the

supervision of a physician to treat her gender identity dysphoria or transsexualism." Id. at 103.

When she entered a federal prison facility, she "told a physician's assistant about her condition. She

also explained that she had been taking estrogen at dosages that were to be lowered three months

later when she was to be operated on to remove her testicles. Cuoco was allowed to keep for self-administration the ten tablets of the hormone she had with her when admitted to the prison." Id.  A prison doctor terminated Cuoco's estrogen treatment.  See id. at 104.  "Cuoco began to suffer psychological and physical withdrawal symptoms resulting from the termination of the estrogen treatment."  Id.  The Second Circuit

> emphasize[d] that [the doctors'] positions as Public Health Service officials d[id] not alone render them immune from suit. Critical to [one doctor's] immunity [wa]s the fact that his complained of behavior occurred entirely in his capacity as a doctor responsible for, and in the course of rendering medical treatment for, Cuoco. Similarly, [the other doctor's] alleged misdeeds related only to his decision, as the principal medical official for the Bureau of Prisons, not to authorize a particular medical treatment for Cuoco. If Cuoco alleged and could prove that either of these defendants violated her constitutional rights in the course of something other than the performance of a medical or related function, or while acting outside the scope of his employment, § 233(a) would not, of course, provide that defendant with absolute immunity.

Id. at 109.

The United States Court of Appeals for the First Circuit in Mendez v. Belton, 739 F.2d 15 (1st Cir. 1984), denied FSHCAA coverage for a suit alleging intentional discrimination on the basis of race and sex in the course of a "professional peer review process [because it] [wa]s not the sort of malpractice claim that 42 U.S.C. § 233(a) . . . meant to protect against."  739 F.2d at 19.  The First Circuit noted that "[c]ases in which defendants have successfully invoked these immunity statutes typically involve claims by patients against doctors for damages caused by improper medical treatment."  Id. at 20 (listing cases).

La Casa contends that the United States has provided coverage under the FSHCAA in cases involving allegations of negligent hiring, supervision, and retention.  See Response at 6.  La Casa relies upon the cases of Benavidez v. United States, 177 F.3d 927 (10th Cir. 1999), and Lopez v. United States, 988 F.Supp. 1239 (D.N.M. 1998).  In Benavidez v. United States, the United States

-17-

Court of Appeals for the Tenth Circuit examined a case involving an Indian Health Service psychologist who allegedly engaged in sexual contact and drug and alcohol abuse with patient, and where the patient filed suit alleging negligent hiring and supervision of the psychologist.  See id. at 928-29.  The district court had "appl[ied] the intentional tort exception to the FTCA's waiver of sovereign immunity [and] . . . thus granted the government's motion to dismiss for lack of jurisdiction."  Id. at 928.  The Tenth Circuit assumed that the psychologist had acted within the scope of his employment.  See id. 928 n.2 ("Because we are reviewing the district court's dismissal of [the plaintiff's] complaint, we also assume that [the defendant psychologist] acted within the course and scope of his employment as a government psychologist.").  The Tenth Circuit explained:

> The gravamen of the complaint in this case is that under the guise of providing counseling, a therapist violated professionally acceptable procedures and induced an emotionally depressed and suicidal teenager, already prone to alcohol and drug abuse, to indulge in the use of such substances and to engage in sexual conduct. Given the settled federal and state law on this issue, we conclude that the allegations in the complaint sufficiently support a claim for professional negligence or malpractice. This sort of claim does not fall within the intentional tort exception to the FTCA's waiver of sovereign immunity.

Id. at 932.  In Lopez v. United States, "patients treated by a therapist employed by the Indian Health Service . . . brought action against the United States pursuant to the [FTCA], seeking recovery on a variety of theories in connection with the tortious acts of the therapist, who allegedly attempted to engage one patient in sexual contact, provided liquor to them, and used liquor and marijuana with them."  Id. at 1243-44.  At issue in Lopez v. United States was whether the claim had been presented "to the appropriate Federal agency within two years after such claim accrues."  Id.  at 1242.  The Tenth Circuit held that, "since the statute of limitations has run on Plaintiffs' case, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims."  Id. at 1245.

Both Benavidez v. United States and Lopez v. United States involved Indian Health Services

-18-

facilities which are not "deemed entities," but are facilities that the United States owned and operated. Further, the individual alleged to have committed the acts asserted in those cases was a federal employee -- a psychologist -- also covered by the FTCA. In both United States v. Benavidez and Lopez v. United States, there were underlying malpractice claims resulting from the transference phenomenon unique to the mental-health relationship between a psychologist, and his or her patient. See Lopez v. United States, 998 F.Supp. at 1243 n.3 (noting that the Tenth Circuit "does not share the Ninth Circuit's view that the transference phenomenon necessarily sets the psychotherapist apart from other professionals who also engage in relationships based on trust, that involve substantial differences in power, confidence, and education between the participants. Nonetheless, the Court does recognize the impact such a powerful relationship can have on the weaker participant, and the damage which can result, should that trust be abused."); Benavidez v. United States, 177 F.3d at 930 ("Courts have uniformly regarded mishandling of transference as malpractice or gross negligence.")(internal quotations omitted). Moreover, in Benavidez v. United States the Tenth Circuit assumed that the defendant-psychologist had acted within the scope of his employment, see 177 F.3d at 282 n.2, while in Lopez v. United States, the dispositive issue was whether the plaintiff's claim had accrued and been filed before the statute of limitations in the FTCA, see 998 F.Supp. at 1242, 1245.

## NEW MEXICO TORT LAW

New Mexico has recognized that allegations against a health-care entity of negligent hiring, supervision, and retention of health care professionals are forms of medical malpractice. See Eckhardt v. Charter Hosp. of Albuquerque, Inc., 1998-NMCA-017, ¶ 44, 953 P.2d 722, 733 (affirming jury verdict against hospital on negligent selection and supervision claim). In Diaz v. Feil, 118 N.M. 385, 881 P.2d 745 (Ct. App. 1994), the New Mexico Court of Appeals

acknowledged that a hospital owes an independent duty of care to patients.  The court noted that to make a prima facie showing that a hospital negligently granted hospital staff privileges to a physician, or negligently retained a staff member, a plaintiff must establish that the hospital negligently failed to screen the competency of the individual, or that it negligently retained a staff member after it knew or should have known of matters involving the general competency of such individual.

Id. at 389-90, 881 P.2d at 749-50.  See Cooper v. Curry, 92 N.M. 417, 420, 589 P.2d 201, 204 (Ct. App. 1978)(noting that, "courts have imposed liability on hospitals under a corporate negligence theory, but this liability has been limited to the negligent granting of staff privileges or the negligent supervision of treatment."), cert. quashed, 92 N.M. 353, 588 P.2 554 (Table)(1978).

In F & T Co. v. Woods, 92 N.M. 697, 594 P.2d 745 (1979), the plaintiff was raped three days after defendant's employee delivered a television set to her home.  See 92 N.M. at 699, 594 P.2d at 747.  Reversing the trial court's denial of the defendant's motion for directed verdict on the negligent retention theory, the Supreme Court of New Mexico held that "defendant should not be held liable under a [n]egligent hiring theory for the criminal act of its employee because, as a matter of law, the act of [the employee-rapist] could not have been foreseen by defendant at the time it hired [him]." 92 N.M. at 701, 594 P.2d at 749.  The Supreme Court of New Mexico noted: "To hold defendant liable under the facts of this case would make every employer, including the State and all governmental subdivisions, an insurer of the safety of any person who may at any time have had a customer relationship with that employer."  92 N.M. at 701, 594 P.2d at 749.

### STANDARDS FOR DISMISSAL UNDER RULES 12(b)(1) AND 12(b)(6), AND  FOR SUMMARY JUDGMENT UNDER RULE 56

The Untied States seeks the termination of the claims against it on three grounds.  Because the caselaw has made the waiver of sovereign immunity by the United States a jurisdictional prerequisite for claims of damages against the federal government, the United States seeks dismissal for lack of jurisdiction.  Alternatively, the United States seeks dismissal on judgment on the merits.

-20-

1.      **Rule 12(b)(1).**

A complaint must demonstrate the basis for federal jurisdiction, and, in an action against the United States, the plaintiff must affirmatively state the jurisdictional basis for the waiver of sovereign immunity.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. at 182.  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or any other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)(stating that a "[r]ule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.  It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.")(internal quotations omitted); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(noting that, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.").

A court has broad discretion to consider affidavits or other documents to resolve disputed jurisdictional facts under rule 12(b)(1).  See Holt v. United States, 46 F.3d at 1003 (stating that "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the merits of the case, the motion should be resolved under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir.), cert. denied, 528 U.S. 964 (1999); Tippet v. United States,

108 F.3d 1194, 1196 (10th Cir. 1997).

### 2.    Rule 12(b)(6).

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl.

-22-

Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.

### 3. Rule 56.

Summary judgment is proper and appropriate where the movant demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995)("Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")(internal quotations omitted); Thrasher v. B&B Chemical Co., 2 F.3d 995, 996 (10th Cir. 1993).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).  The movant bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, rule 56(e) requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324.

While the party moving for summary judgment has the initial burden of establishing that

there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law, see id. at 330, once the moving party meets its burden, the party opposing the motion must come forward with specific facts supported by admissible evidence that demonstrates the presence of a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-249; Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).  When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ADMINISTRATIVE PROCEDURES ACT

In relevant part, 5 U.S.C. § 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . .

Id.  The 1976 amendment to § 702, adding the second sentence, was intended "to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment."  Bowen v. Massachusetts, 487 U.S. 879, 890 n. 15, 891-92, 912 (1988)(holding that a district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702 to review a Department of Health & Human Services order refusing to reimburse a state for a category of Medicaid expenditures).  5 U.S.C. § 702 does not specifically provide federal jurisdiction.  If, however, review is proper under the APA, federal courts may have subject-matter jurisdiction under 28 U.S.C. § 1331.  See Bowen v. Massachusetts, 487 U.S. at 891 n. 16, 893 ("[I]t is common ground

that if review is proper under the APA, the District Court had jurisdiction under 28 U.S.C. § 1331.").

## LAW REGARDING THE AWARD OF ATTORNEY'S FEES

"As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute." Paramount Pictures Corp. v. Thompson Theaters, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980).  See Craft v. Sunwest Bank of Albuquerque, 84 F.Supp.2d 1226, 1238-39 (D.N.M. 1999) ("In the absence of statutory authority to the contrary, parties pay their own attorney's fees.").  28 U.S.C. § 1927 deals with a counsel's liability for excessive costs.  It states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Local Rules for the District of New Mexico set out the application process for attorney's fees in New Mexico Federal District Court.  The Local rule states:

> **54.5 Application for Award of Attorney's Fees.**
>
> **(a) Filing of Motion.** A motion for attorney's fees not brought pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), must be filed and served within thirty (30)calendar days after entry of judgment. Failure to file and serve within this time constitutes waiver of a claim to attorney's fees. Movant must submit a supporting brief and evidence (affidavits and time records). The motion must comply with D.N.M.LR Civ. 7.
>
> **(b) Time Records.** An attorney must keep concurrent time records in 42 U.S.C. § 1983 cases and in other actions where there is a potential for an award of attorney fees. Time records are kept by the attorney and are not filed until after final judgment unless otherwise ordered.

D.N.M.L.R. Civ. 54.5.

## ANALYSIS

The issue is the intent of Congress in promulgating FSHCAA to provide FTCA coverage to

deemed entities, such as La Casa.  The disputed legal issue between the parties pertains to whether

Bauer v. Smith alleges medical malpractice claims against La Casa for actions committed by La

Casa within the scope of its federal employment.  See Complaint ¶ 1, at 4-5.   The United States has

moved to dismiss La Casa's Complaint and underlying claims under rule 12(b)(1) and 12(b)(6) for

lack of subject-matter jurisdiction and/or failure to state a claim, and, alternatively, for summary

judgment under rule 56.  See Motion at 1.  Whether considering a challenge to the Court's subject-

matter jurisdiction brought under rule 12(b)(1) or under rule 56, La Casa's burden remains

essentially the same.  It must present evidence sufficient to establish the Court's subject-matter

jurisdiction by a preponderance of the evidence.  See United States ex rel. Hafter v. Spectrum

Emergency Care, Inc., 190 F.3d 1156, 1160 n. 5 (10th Cir. 1999)("Whether we consider . . . [the]

motion as a motion to dismiss under Rule 12(b)(1) or a motion for summary judgment, Appellants'

burden remains essentially the same -- they must present affidavits or other evidence sufficient to

establish the court's subject matter jurisdiction by a preponderance of the evidence.").  La Casa has

not borne its burden of demonstrating the Court's jurisdiction to hear its claims.  The United States

has not waived its sovereign immunity.  Accordingly, La Casa cannot assert claims against it under

28 U.S.C. §§ 1331 or 2201 because the Court therefore lacks subject-matter jurisdiction.

**I.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT.**

La Casa does not dispute the validity of most of the undisputed facts set out in the United

States' supporting memorandum to its Motion to Dismiss or, in the Alternative, Motion for

Summary Judgment and Supporting Memorandum.  See Response ¶¶ 1-10, at 1-2.   La Casa

challenges only a portion of fact number 2.  See id. ¶ 2, at 2 ("La Casa admits that Laura

McNaughton was treated by Dr. James Smith, DDS, for dental care on June 2, 2005.  However, La

Casa disputes Defendant USA's unsupported statement of fact that Ms. McNaughton was not seen

at the dental clinic by Dr. Smith after that date."). The United States attributes undisputed fact number 2 to Exhibit B to its Motion, Patient Progress Notes for Laura F. McNaughton (dated September 7, 2006). See Motion ¶ 2, at 3, Exhibit B. La Casa, however, offers no evidentiary support for its suggestion that Smith saw McNaughton at the clinic after June 2, 2005.

Once the United States came forth with competent evidence showing that there was no visit after June 2, 2005, La Casa had the obligation to come forth with competent evidence showing that there is a genuine issue about the number of visits and when they occurred. La Casa did not meet its burden. Accordingly, the Court may rely on La Casa's statement that there is no indication that Laura McNaughton was seen at the La Casa dental clinic other than on June 2, 2005.

La Casa also contends that there are questions of fact in the Baur lawsuit "concerning whether Dr. Smith ever made a house call to Ms. McNaughton's home, whether La Casa had actual notice of allegations that Dr. Smith posed a risk of harm to women, whether on the night of Ms. McNaughton's death Dr. Smith was making a house call, and whether Ms. McNaughton was ever seen at the La Casa dental clinic by Dr. Smith other than her scheduled appointments." Cross-reply at 9. Whether there may be issues of fact in the Baur lawsuit, however, has no bearing on the existence of material facts in this case. Moreover, at the hearing, the parties agreed that there is no dispute as to any material fact. See Transcript of Hearing Tr. at 42:18-22 (Court & Mitchell)(noting that the United States agrees with La Casa that there are no genuine issues of material fact and that the Court should decide the issue as a matter of law.). There is, therefore, no dispute as to any material facts.

## II.   LA CASA'S COMPLAINT DOES NOT ESTABLISH THE COURT'S JURISDICTION.

In its Complaint, La Casa does not assert the APA as a basis for the Court's jurisdiction and

does not assert any legal basis establishing a waiver of sovereign immunity.  Thus, La Casa does not assert any legal basis for establishing the Court's subject-matter jurisdiction over this case.  The Court will thus dismiss La Casa's Complaint against the United States.

## A. BECAUSE LA CASA DID NOT INVOKE THE COURT'S JURISDICTION UNDER  5 U.S.C. § 702, IT HAS NOT DEMONSTRATED THAT THE UNITED STATES HAS WAIVED ITS SOVEREIGN IMMUNITY.

La Casa has failed to meet its burden of establishing the Court's subject-matter jurisdiction because it has not demonstrated any statutory waiver of the United States' sovereign immunity for any of its claims alleged in the Complaint.  Accordingly, the Court lacks jurisdiction over La Casa's Complaint, and the Court will dismiss it.

In its response, La Casa contends that the Court has jurisdiction under the APA, 5 U.S.C. § 702.  See Response at 3-4.  La Casa argues that the United States' sovereign immunity is waived pursuant to 5 U.S.C. § 702 of the APA for La Casa's Complaint for Declaratory Judgment Relief.  See id. at 3.  La Casa contends that § 702 waives the United States' sovereign immunity defense, and the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  See Response at 4.  La Casa asserts that it filed its Complaint for Declaratory Judgment against the United States seeking judicial review of the HHS' denial of medical malpractice liability coverage under the FTCA.  See id. at 4.

La Casa has not alleged jurisdiction under 5 U.S.C. § 702 in its Complaint.  See Complaint.  Instead, La Casa raises 5 U.S.C. § 702 as a basis for the Court's jurisdiction for the first time in its Response to the United States' dismissal motion.  See Response at 3-4.  Jurisdiction, however, must be apparent on the face of a complaint, and a complaint is subject to dismissal for failure to allege the court's subject-matter jurisdiction.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. at 182 (explaining that a complaint must demonstrate the basis for federal jurisdiction, and, in an action

against the United States, the plaintiff must affirmatively state the jurisdictional basis for the waiver of sovereign immunity).

The Court recognizes that a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or any other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)("Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court.)(internal quotations omitted).  La Casa has conceded, however, that there are no material facts at issue in this case.  See Tr. at 42:18-22 (Court & Mitchell)(noting that the United States agrees with La Casa that there are no genuine issues of material fact and that the Court should decide the issue as a matter of law.).  La Casa has not introduced any evidence that it filed its declaratory judgment suit "seeking judicial review of the [HSS'] denial of medical malpractice liability coverage under the [FTCA]" is pursuant to 5 U.S.C. § 702.  Response at 4.

At the August 29, 2007 hearing, La Casa argued that its Complaint stated the complete grounds of jurisdiction under the APA and under 28 U.S.C. § 1331,  see Tr. at 36:4-12 (Smith & Court), but its Complaint states: "The Court has jurisdiction in this action pursuant to 28 U.S.C. §1331, and this action is filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201," Complaint ¶ 1, at 1.  La Casa does not request that the Court conduct a record review pursuant to 5 U.S.C. § 702.  See Complaint ¶¶ 1-7, at 4-5.  Moreover, as the United States observed at the hearing, no record was submitted for the Court's review in this case.  See Tr. at 41:19-23 (Mitchell). La Casa conceded at the hearing that the documents it would want the Court to consider were never submitted to the HHS, and thus would  be outside of any administrative record.  See id. at 44:12-19 (Court & Smith).  Thus, La Casa has not properly invoked the Court's jurisdiction under 5 U.S.C.

§ 702.

### B.   LA CASA IS NOT DEEMED A FEDERAL EMPLOYEE OF THE PHS WITH RESPECT TO ITS EMPLOYMENT DECISIONS REGARDING SMITH.

La Casa cannot establish grounds for deeming it a federal employee for purposes of the FTCA under the facts of this case.  La Casa cannot be deemed a federal employee based on the terms of the applicable statute, because the scope of deemed federal employment under the FSHCAA is limited to cases seeking damages resulting from the performance of medical, surgical, dental, or related functions.  See 42 U.S.C. § 233(g).  La Casa was not acting within the scope of its employment under  the FSHCAA with respect to the allegations against it, in the Baur lawsuit, of negligently hiring, supervising, and retaining Smith.  New Mexico law is irrelevant to the Court's analysis whether La Casa is a "deemed" entity under the FSHCAA.  Although any potential substantive causes of action in the Baur litigation under the FTCA will be determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), the Court's determination whether it has subject-matter jurisdiction over La Casa's claim is a matter of federal law under the FSHCAA.

The language "damages . . . resulting from the performance of medical, surgical, dental, or related functions . . .by an employee . . . while acting within the scope of his office or employment" is important to an analysis of coverage under the FTCA in this action.  2 U.S.C. § 233(a). McNaughton's death did not result from the performance of dental functions by Smith for the benefit of La Casa.  Accordingly, there is no coverage under the FTCA for La Casa or its employees under the "related functions" analysis.

The parties do not agree on the meaning of the term "or related functions" contained in the FSHCAA.  The United States contends that the phrase "or related functions" references and is

inextricably tied to "the performance of medical, surgical, dental . . . functions" contained in §

233(a) of the FSHCAA.  Motion at 9.  It is the United States' position that the term "related

functions" becomes relevant only within the context of an action involving medical treatment or,

in some way, related to medical care.  Id. at 9-10.  The United States contends that the FTCA

coverage for deemed entities "applies only to actions for medical malpractice."  Id. at 11.

> **1.   Under the Circumstances of this Case, "Related Functions" Does Not Include the Negligent Hiring, Supervision, and Retention of Smith, Because Smith's Actions with McNaughton on December 9, 2005, is Not a Form of Medical Malpractice, Under the FSHCAA.**

The Court agrees that the phrase "a related function" references and is inextricably tied to

"the performance of medical, surgical, dental . . . functions."  2 U.S.C. § 233(a). While negligent

hiring, supervision, and retention of medical staff may sometimes be related to the provision of

medical services, and thus medical malpractice, here there is no allegation that the events on

December 9, 2005 were in any way related to the provision of medical treatment or medical care.

Unless the events giving rise to the action are related to the provision of medical services, the Court

is not convinced that the activity is a "related function."

The Court has not found caselaw finding coverage under § 233(a) in the context of

employment decisions.  See Rivera v. Morris Heights Health Ctr., 2006 WL 345855 at **1-2

(finding coverage where the acts of the defendant doctor were within the scope of employment for

the defendant medical center because the Attorney General certified that the Center and the doctor

"were acting within the scope of their deemed federal employment at the times giving rise to [the]

suit . . . [and] the United States [was] . . . substituted in place of [the defendants].");  Teresa T. v.

Ragaglia, 154 F.Supp.2d at 300 (finding that coverage is applicable to a doctor who fails to report

child abuse, because the statutory duty to report child abuse is a function related to the doctor's

performance of medical services, "add[ing] a required element to the doctor's evaluation of his patient."); Cuocco v. Moritsugu, 222 F.3d at 109 (finding that coverage was applicable to defendant prison doctors because their "complained of behavior occurred entirely in [their] capacity  as . . . doctor[s] responsible for, and in the course of rendering treatment for, [the Plaintiff]" and emphasizing that  their "positions alone [did] not render them immune from suit."). This case is distinguishable from those finding coverage because there is no allegation -- in this case or in Baur -- that Smith was providing dental services at the time of McNaughton's death.  Reporting child abuse may well be a covered activity because the discovery of the harm occurred in the course of providing medical services.  La Casa's employment decisions  in hiring and retaining Dr. Smith are thus not "related functions" to providing dental services under the FSHCAA.  La Casa's argument would push the limits of coverage further than any caselaw has yet placed them.

The Court notes that La Casa's obligations under the FSHCAA involve "review[ing] and verif[ying] the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians and other licensed or certified health care practitioners, and, where necessary. . .  obtain[ing] the permission from these individuals to gain access to this information."  42 U.S.C.A. § 233(h).  The Court notes that there is nothing in the record that indicates La Casa failed to perform any of the above obligations when it hired Smith. Although the Court acknowledges that hiring personnel, such as doctors like Smith, may be reviewed as a "related function" to La Casa's provision of dental services, it does not believe, under the facts and circumstances of this case, that La Casa's hiring, supervising, or retention of Smith is a "related function" to the death of McNaughton.  Because the Court believes that the purpose of the FSHCAA is to provide immunity to medical centers and medical personnel for performing duties "inextricably woven into  [their] performance of medical functions,"  Teresa T. v. Ragaglia, 154

F.Supp.2d at 299-300, the Court does not believe La Casa's hiring of Smith, and Smith's murder of McNaughton are "inextricably woven into [their] performance of medical functions."

As a matter of law, the coverage must cut off liability at some point, and Smith's conduct as to McNaughton on December 9, 2005, does not come within a common sense definition of a function that is related to the delivery of medical services or that is medical malpractice. There is no evidence in this case, or allegation in the <u>Baur</u> case, that Smith was with McNaughton on December 9, 2005 to deliver or provide medical care or services. The Court believes that to conclude this incident on December 9, 2005 was "related to" medical care would be to stretch the definition beyond what Congress intended to include, and that even hiring and supervising doctors should be related to the delivery of medical services.

The Court need not decide whether negligent hiring, supervision, and retention of a doctor is never a form of medical malpractice under the FSHCAA. Such activities, under certain circumstances, could be medical malpractice, but the Court need not decide that issue in this case.

**2.    <u>La Casa was not Within the Scope of its Employment Under the FSHCAA, for the purposes of Smith's Actions on December 9, 2005, When it Hired, Supervised, and Retained Smith as a Dentist.</u>**

La Casa attempts to characterize the United States as its "medical malpractice liability insurer." Complaint ¶ 5, at 5. Whether limited to "medical malpractice actions" and/or actions relating to medical treatment, however, the FSHCAA was intended to cover injuries arising out of a doctor-patient relationship, rather than those arising from an employment relationship. See <u>Logan v. St. Charles Health Council</u>, No. 1:06CV0039, 2006 WL 1149214 at *2 (W.D. Va. May 1, 2006)(finding it " persuasive . . . that the statute was intended to cover injuries arising out of the doctor-patient relationship, rather than those arising from an employment relationship."). Here, there is no more than an employment relationship present; there is no evidence or allegation, in this

case, or in <u>Baur</u>, that Smith and McNaughton were in a doctor-patient relationship on December 9, 2005.

La Casa contends that the United States has provided FTCA coverage in the past to deemed entities over allegations of negligent hiring, supervision, and retention.  <u>See</u> Response at 6 (citing <u>Benavidez v. United States</u>, 177 F.3d 927 (10th Cir. 1999) and <u>Lopez v. United States</u>, 998 F.Supp.1239 (D.N.M. 1998)).  Neither <u>Benavidez v. United States</u> nor  <u>Lopez v. United States</u>, however,  reached the question whether coverage under the FSHCAA was appropriate.   In <u>Benavidez v. United States</u>, the Tenth Circuit assumed that the psychologist had acted within the scope of his employment.  <u>See</u> 177 F.3d at 928 n.2 ("Because we are reviewing the district court's dismissal of [the plaintiff's] complaint, we also assume that [the defendant psychologist] acted within the course and scope of his employment as a government psychologist.").  In <u>Lopez v. United States</u>, the issue was  whether the claim had been presented "to the appropriate Federal agency within two years after such claim accrues." 998 F.Supp. at 1242.  The Tenth Circuit held that, "since the statute of limitations has run on Plaintiffs' case, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims."  <u>Id.</u> at 1245.  Moreover, <u>Benavidez v. United States</u> and <u>Lopez v. United States</u> involved facilities that the United States owned and operated, not "deemed" facilities. Further, the individual alleged to have committed the acts asserted in those cases was a federal employee -- a psychologist -- also covered by the FTCA.

The facts contained in <u>Baur v. Smith</u>, and the alleged negligence by La Casa of hiring, retaining, and supervising Smith within the context of those facts, do not constitute medical treatment or malpractice, nor do they come within a reasonable interpretation of "or related functions."  There is no medial malpractice in the facts in the <u>Baur</u> action, because La Casa has not demonstrated a nexus between its hiring, supervising, or retaining Smith to perform a medical

function -- a dental examination on McNaughton at La Casa - -  and Smith's later willful and deliberate kidnaping, murder, attempted criminal sexual penetration, and murder of McNaughton.

McNaughton's death does not arise out of a dentist/doctor-patient relationship.  There is no allegation that Smith was acting within the scope of his employment on December 9, 2005 or that the death arose from the performance of medical functions.  The alleged negligence of La Casa does not arise out of the dentist-patient relationship between Smith and McNaughton, but rather arises solely from the employment relationship between La Casa and Smith.  Under the FSHCAA's language, if Smith had committed dental malpractice or some other medically related function on McNaughton resulting in injury or death, the FTCA might cover La Casa.  But the same result does not occur under the facts in the <u>Baur</u> lawsuit.  In <u>Baur</u>, the alleged negligent hiring, supervision, and retention would not be an issue but for Smith murdering McNaughton.

La Casa asserts that its hiring, retaining, and supervising of Smith fall under the scope of federal employment with the PHS.  <u>See</u> Response at 5.  La Casa asserts that the allegations against it in the <u>Baur</u> lawsuit are forms of medical malpractice, <u>see</u> Complaint ¶ 20, at 4, and that the FTCA covers such activities.  <u>See id.</u> ¶ 22, at 4.  FTCA coverage to La Casa, however, is limited to actions committed by La Casa within the scope of its PHS employment.  The United States and La Casa both agree that the intent of the FSCHAA is to provide medical malpractice coverage to deemed entities and to prevent the diversion of limited financial resources from patient care to excessive medical malpractice premiums.  <u>See</u> Motion at 10-11; Response at 5, 7.  La Casa contends that the FTCA coverage to La Casa is limited to medical malpractice suits for actions committed by La Casa within the scope of its PHS employment.  <u>See</u> Response at 5.  The parties do not dispute, however, that the coverage provided by the FTCA for certain entities applies only to the performance of medical or dental functions.  <u>See</u> Motion at 9; Response at 5.

There was no performance of dental functions when Smith assaulted and battered Ms. McNaughton resulting in her death.  See Complaint ¶ 12, at 3.  The crimes committed likely did not take place during any physician-patient relationship, do not involve a standard of care for dentistry, did not occur while Smith was on duty at La Casa, did not occur at a La Casa delivery site that the Department of Health & Human Services had approved in La Casa's funding grant, and had no causal connection between Smith's employment as a dentist with La Casa and the crimes that he committed.   Although a health care providers's negligence in hiring or retaining medical professionals may, under some circumstances, be medical malpractice, the Court does not believe under the facts and circumstances of this case that La Casa's employment decisions regarding Smith was a function related to the provision of medical or dental services.

La Casa contends that "[i]f it is ultimately determined that La Casa negligently hired, supervised, and/or retained Dr. Smith such that it was aware of any dangerous propensities or conduct on the part of Dr. Smith, which would endanger any of La Casa's patients, then La Casa may be directly liable in allowing the injurious situation to occur."  Response at 9-10.  La Casa objects to the United States' implication "that La Casa's duty owed to each patient in hiring, supervising, and retaining competent, safe health care professionals ends the moment the patient exits the clinic door."  Response at 10.  La Casa argues that a hospital would be "susceptible to medical malpractice claims" if it "retains a physician despite knowing of his violent criminal acts against patients."  Id.

The Court is relying primarily on a reading of the applicable statutes and its interpretation of the scope of the phrase "damage[s] . . . resulting from the performance of a . . .  dental, or related function . . . . by an . . . employee  . . . while acting within the scope of his . . .  employment  . . . ." 42 U.S.C. § 233(a).  After carefully reviewing the applicable statutes, the Court concludes that the

FTCA does not cover La Casa for Smith's non-medical activities, because the facts in this case do not come within the FSHCAA's prescribed coverage, because La Casa was not deemed a federal employee under these facts, and because La Casa was not acting within the scope of its employment when Smith was assaulting McNaughton on December 9, 2005.  The United States thus has no statutory obligation, or authority, to defend La Casa in the Baur lawsuit.

In conclusion, La Casa cannot properly be deemed a federal employee under the facts in this case and, therefore, is not entitled to coverage under the FTCA.  The United States has no obligation to defend and indemnify La Casa in the Baur lawsuit.  The Court will dismiss La Casa's Complaint against the United States because the Court lacks jurisdiction to adjudicate its claim.  La Casa has failed to state a claim because La Casa's complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177. Further, there is no genuine issue of material fact because La Casa has not come forward with specific facts supported by admissible evidence that demonstrates the presence of a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-249; Biester v. Midwest Health Servs., Inc., 77 F.3d at 1266.

## III.  THE COURT WILL NOT AWARD THE UNITED STATES ATTORNEY'S FEES.

The United States has not asserted any contractual or statutory right to attorney's fees.  See Paramount Pictures Corp. v. Thompson Theaters, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980)("As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute."). See Craft v. Sunwest Bank of Albuquerque, 84 F.Supp.2d 1226, 1238-39 (D.N.M. 1999) ("In the absence of statutory authority to the contrary, parties pay their own attorney's fees.").  The Court believes that La Casa brought its claim in good faith and while La Casa has not prevailed, the Court cannot say that its contentions were frivolous or otherwise brought

for an improper purpose.  The Court will deny the United States' request for attorney's fees.

**IT IS ORDERED** that the Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted in part and denied in part.  La Casa de Buena Salud's Cross-Motion for Summary Judgment is denied.  The Plaintiff's Complaint is dismissed as to Defendant United States of America for lack of jurisdiction.  The United States' request for an award of costs and attorney's fees incurred in defending this lawsuit is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Stephen M. Simone
Paul Mitchell Smith
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gregory J. Fouratt
  United States Attorney
Jan Elizabeth Mitchell
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the United States*

Corbin Hildebrandt
Don Clifford
Corbin Hildebrandt, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendants, Bennett J Baur as Personal*
    *Representative of the Estate of Laura McNaughton,*
    *Deceased, Maria Beardmore, David Beadmore,*
    *Madalin Corine McNaughton, a Minor, Kelsey*
    *Paige McNaughton, a Minor*